# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Geraldine Soat Brown | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 382 | **DATE** | 7/12/2002 |
| **CASE TITLE** | Banks vs. Barnhart | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  For the reasons set out in the Memorandum Opinion and Order, the plaintiff's motion for summary judgment [dkt 19] is denied, and the defendant's motion for summary judgment [dkt 24] is granted.

*Geraldine Soat Brown*

(11) ■ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | |
|---|---|---|---|
| | No notices required. | | number of notices |
| ✓ | Notices mailed by judge's staff. | | JUL 15 2002 |
| | Notified counsel by telephone. | | date docketed |
| | Docketing to mail notices. | | AW |
| | Mail AO 450 form. | | docketing deputy initials |
| | Copy to judge/magistrate judge. | | 7/12/2002 |
| | | | date mailed notice |

**Document Number**

26

tw / courtroom deputy's initials

02 JUL 12 PM 2: 25

U.S. DISTRICT COURT
CLERK

date/time received in central Clerk's Office

mailing deputy initials

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

WILLIAM G. BANKS,             )

        Plaintiff,          )    **Cause No. 01 C 382**

                     )

        v.               )    **Magistrate Judge Geraldine Soat Brown**

                     )

JO ANNE BARNHART[1],       )

        Defendant.      )

DOCKETED

JUL 1 5 2002

## MEMORANDUM OPINION AND ORDER

Plaintiff William G. Banks brings this action pursuant to 42 U.S.C. § 405(g) challenging the decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's request for Social Security Disability Benefits ("SSDB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 423 *et seq.* and 1381 *et seq.*[2] The Commissioner denied Plaintiff's application for disability benefits initially (R. 76, 82-

---

[1]   The defendant in this case was listed previously as Larry G. Massanari, Acting Commissioner of the Social Security Administration. On November 9, 2001, Jo Anne B. Barnhart became the Commissioner of Social Security. Accordingly, pursuant to Fed. R. Civ. P. 25(d)(1) and 42 U.S.C. § 405(g), Jo Anne B. Barnhart is substituted for Larry G. Massanari as the defendant in this suit.

[2]   The statutes and regulations for SSDB and SSI are essentially identical on issues relating to determination of disability. *See Ostrowski v. Heckler*, 609 F.Supp. 1109, 1112-13, n.1 (N.D. Ill. 1985) (Aspen, J.) ("Both disability programs, SSI and SSDI, establish the same legal standard for disability.") (citing 42 U.S.C. § 423(d)(1)(A) (SSDI) and 42 U.S.C. § 1382c(a)(3)(A) (SSI)). Accordingly, this Memorandum Opinion will cite only the section number of the statute or regulation pertaining to SSDB.



85)[3] and upon review. (R. 75, 78-80). Plaintiff requested and received a hearing before an administrative law judge ("ALJ"), who subsequently affirmed the denial of benefits. (R. 14-20.) The Appeals Council of the SSA's Office of Hearings and Appeals denied Plaintiff's request for review of the ALJ's decision (R. 6-7A) and Plaintiff timely filed the present action. [Dkt # 1.] The parties now have filed cross-motions for summary judgment under Fed. R. Civ. P. 56 [Dkt ## 19, 24], and have consented to the jurisdiction of a magistrate judge under 28 U.S.C. 636(c)(1). [Dkt ## 10, 11]. Thus, the decision of this Court constitutes the final ruling on the cross-motions. For the reasons set forth below, Plaintiff's motion for summary judgment and an award of disability benefits is DENIED, and Defendant's motion for summary judgment is GRANTED.

## FACTUAL BACKGROUND

Plaintiff worked for a Chicago, Illinois beer wholesaler as a salesman beginning in 1986. (R. 128, 130.) Part of his job was to go to his retail store accounts and stock shelves and coolers with cases of beer and construct promotional displays. He also handled kegs of draft beer for beverage vending stands at several sports stadiums. The work entailed frequent lifting of up to 25 pounds and occasional lifting of up to 100 pounds, frequent bending and reaching, and the majority of the workday spent walking or standing. (R. 129, 131.)

On May 24, 1995, Plaintiff, then 49 years old, was involved in a motor vehicle accident in which he was hit from behind. (R. 30, 112, 160.) X-rays taken at a hospital immediately after the accident showed no broken bones, and Plaintiff was not hospitalized. (R. 31, 160.) Plaintiff

---

[3] "R. ___ " refers to the certified record of proceedings, evidentiary documents, and administrative hearing transcript prepared by the Social Security Administration's Office of Hearings and Appeals pursuant to 42 U.S.C. § 405(g).

experienced continuing neck and lower back pain, however. (R. 260.) Two days after the accident his treating physician reported that Plaintiff was unable to work due to the accident-related injuries. (R. 254.) Plaintiff began physical therapy, heat treatment, and was given nerve block injections. (R. 255, 260.)

Plaintiff's condition did not improve, and in July, 1995, he was referred to a neurologist for evaluation. Based on magnetic resonance imaging ("MRI") tests, the neurologist diagnosed Plaintiff as having moderate to severe degenerative changes (narrowing of disc spaces) and stenosis (constricture of nerve passages) in the lumbar spine (lower back) and cervical spine (neck), but with no indication of disc herniation, bone compression fracture or subluxation (bone dislocation), or damage to the spinal cord. (R. 162-63, 166-68, 256.)

Plaintiff continued physical therapy and remained off work until mid-November 1995, when the neurologist cleared Plaintiff to return to work. (R. 165.) After two weeks Plaintiff reported back to the neurologist that he was having a difficult time at work because of the continued pain. The neurologist again reported that Plaintiff was unable to work and referred him to an orthopaedic specialist. (R. 164.)

The orthopaedist confirmed degenerative disc disease of the cervical and lumbar spine. Plaintiff reported to the orthopaedist that he experienced constant pain of varying intensity in his back and neck, with more pain in the back. The orthopaedist noted that the previous physical therapy had been of no benefit, and the epidural therapy (nerve block injections) helped, but only transiently. He prescribed mechanical physical therapy. (R. 196-97.) In late January 1996, after a month of mechanical therapy, the orthopaedist reported that Plaintiff was progressing slowly under the mechanical therapy, and cleared Plaintiff to return to work four hours a day, with lifting restricted

3

to ten pounds. (R. 194.)

Plaintiff's employer transferred Plaintiff to customer accounts where he was not required to do the shelf-stocking and other handling of product that he had done prior to his injury. Plaintiff still traveled to the customers' stores, but only to check on the account and write orders. (R. 71.) Plaintiff testified that he was able to take breaks in between calls on customers as needed to sit in his car with the seat reclined until he felt able to get up and walk again. (R. 73.) Plaintiff stated that initially he did not make it to work every day, but took off work several times because of his pain. However, his employer gave Plaintiff notice that he would be terminated from employment if these absences continued. After receiving this warning, Plaintiff stated, "[R]egardless of what it took to get there, I would get there." (R. 73.)

Plaintiff returned to the orthopaedist in late February, 1996. The doctor noted Plaintiff's low back pain was slightly worse, but Plaintiff's symptoms were not significant enough to consider surgery. Plaintiff was told to continue therapy, and to increase his number of hours at work if he felt able to do so. (R. 192.)

By mid-April, 1996, the orthopaedist reported that Plaintiff was working eight hours a day. (R. 189.) Plaintiff now complained more of neck pain than lower back pain. The doctor prescribed further mechanical therapy for the neck pain, and concluded that Plaintiff was "perfectly able to continue to work at the level of his functional capacity evaluation (light to medium) while undergoing therapy for the cervical spine." (R. 189.) X-rays ordered by a second physician who saw Plaintiff in late April, 1996, confirmed this evaluation. The second doctor diagnosed acute recurrent low back pain with chronic osteoarthritis of the lumbar vertebrae and degenerative disc disease of the lumbar area, but again prescribed only physical therapy, and concluded that Plaintiff was able

4

to continue "[r]egular work, as his work is very light, as he is a salesman and does not have any physical stress." (R. 183.)

Shortly after, in early May 1996, Plaintiff returned to the orthopaedist complaining that he had aggravated his lower back pain by twisting his back while sliding in a desk chair at work answering phones. Plaintiff also reported more neck pain. The orthopaedist still did not consider Plaintiff a candidate for surgery, but considered that if Plaintiff was as "unstable regarding a mechanical problem" as it appeared, "he may have difficulty remaining at work." (R. 187.) In June 1996, Plaintiff underwent three level discography, which was reported as negative. (R. 185.) In an August, 1996 report the orthopaedist concluded, "At this point I think we have effectively cleared a structural cause" for Plaintiff's pain symptoms. (R. 185.)[4]

After the visit to the orthopaedist in August 1996, there is no indication that Plaintiff sought any further medical treatment during the year 1996. Apparently Plaintiff worked full time through the end of that year. (R. 69.) He testified at the administrative hearing that this was part of a "trial work period" that lasted three or four months, although he was uncertain about the actual dates that he worked in 1996. (R. 64-66.) An SSA report of Plaintiff's annual earnings over his working career showed that for 1996 Plaintiff earned $20,593.79, compared with approximately $23,000 in 1995 and an average in the previous four years of approximately $40,000 a year. (R. 118.)

On January 6, 1997, Plaintiff's employer announced that it was laying off eleven workers, including Plaintiff. (R. 70.) At the administrative hearing Plaintiff testified that prior to the layoff he was under the impression that his employer was satisfied with his work. (R. 69-70.) Plaintiff said

---

[4] At the hearing before the ALJ, the medical expert testified that this meant that an organic, structural cause had been ruled out. (R. 51.)

that all his evaluations over the prior ten years had been satisfactory. (R. 70.) When the employer announced the eleven layoffs, Plaintiff was told that the company had received reports in recent weeks from his supervisor that he was not performing up to the level the company expected. (R. 70.) At the administrative hearing Plaintiff stated that prior to his injury his method of reaching sales quotas was to help customers sell product by moving inventory from the customer's storage room and placing it in displays or stocking the coolers and shelves. After the injury, the physical restrictions placed on Plaintiff prevented this handling of product, and limited him to writing up sales orders. He speculated at the hearing that "maybe" this was why his employer made the evaluation that Plaintiff's sales were not up to what they should be. (R. 72.) However, at the hearing Plaintiff also testified that at the time of the layoff he wanted to continue working and thought he would be able to do so. (R. 71.)

There is no evidence that Plaintiff sought further medical treatment after August 1996 until late April 1997, when Plaintiff's orthopaedist referred Plaintiff to a rehabilitation clinic. (R. 221.) Plaintiff was examined at the rehabilitation clinic on May 6, 1997. He reported that he had been off work since January 1997 and had been experiencing low back pain for the past two years, since the auto accident. He described his low back pain as an aching pain that, on a scale of one to ten, he rated as a three on his best days and a ten on his worst days. He said the pain was aggravated by prolonged sitting, heavy lifting, and increased activity. (R. 214.)

Plaintiff was diagnosed as having low back pain and myofascial pain (pain triggered at hypersensitive points in muscle and connective tissue), probable joint dysfunction, and leg length discrepancy. Plaintiff also showed symptoms of pain and limited motion in his left shoulder. Plaintiff was prescribed physical therapy that would focus on stretching, posture, pelvic tilt, and

6

home exercise, as well as stretching and ultrasound treatment for the left shoulder, and evaluation for a shoe lift to treat the leg length discrepancy. He also was given a prescription for pain medication. (R. 215.)

Plaintiff returned to the rehabilitation clinic on June 24, 1997, reporting a 25% improvement overall. The examining physician reported that Plaintiff responded well to physical therapy and a trial of a right shoe lift. Plaintiff showed decreased trigger points of myofascial pain, apparent improvement in his left shoulder, and no loss of motor strength in either the upper or lower extremities of his arms and legs. The doctor also reported that Plaintiff now was working full time, but had decreased his amount of lifting. (R. 211, 216.)[5] Plaintiff was directed to continue with the previously prescribed pain medication, as well as beginning a second medication to help further decrease the myofascial pain. Plaintiff's physical therapy sessions were increased to three times a week, and he was encouraged to increase aerobic activities such as swimming and cycling. (R. 209-11, 216.)

On July 16, 1997, Plaintiff returned to the rehabilitation clinic complaining of pain in the left

---

[5] There is some confusion in the record about whether Plaintiff engaged in full time work during 1997. Although the ALJ concluded that Plaintiff had not engaged in any substantial work activity between January 1997 and the issuance of the decision (R. 19), the record contains a few references from June 1997 indicating that Plaintiff actually worked full time during that period. (R. 211, 216, 219-20.) On May 6, 1997, Plaintiff signed a University of Chicago Hospitals Rehabilitation Center form indicating that he was working full time at Chicago Beverage Systems. (R. 219-20.) Two other forms from the Rehabilitation Center from June 24, 1997, also indicate that Plaintiff was working full time with decreased lifting. (R. 211, 216.) These forms appear to be intake forms, one being handwritten and the other being the typed version. (*Id.*) At oral argument, Plaintiff's counsel attempted to clear up the confusion by pointing to other record evidence including a document that states that Plaintiff's last day at Chicago Beverage Systems was January 6, 1997 (R. 106), a Social Security Administration document indicating that Plaintiff had no reported income in 1997 (R. 118), and Plaintiff's application for benefits and disability report from August 1997, both of which report that Plaintiff had not worked since January 6, 1997. (R. 113, 124-29).

side of his neck and upper left arm, similar to the pain he experienced after the accident. On examination he was found to have limited range of motion in his neck and some decrease in left shoulder internal rotation, with minimal pain. Otherwise, the shoulder function was within normal limits. Plaintiff continued to show no decrease in muscle strength in his arms or legs. (R. 204.) The examining physician reported that the neck pain appeared consistent with nerve root irritation probably secondary to cervical spinal stenosis. The doctor prescribed a new series of pain medications and noted that he would try to obtain the MRI and other treatment records from the physician who treated Plaintiff shortly after the May 1995 accident. (R. 202.) After reviewing the 1995 MRI on July 23, 1997, the doctor prescribed a repeat MRI of the cervical spine. (R. 198, 201.)

On July 29, 1997, Plaintiff returned to the rehabilitation clinic, reporting that his upper left arm now was weak and he was unable to lift it. The examining physician sought to determine whether Plaintiff's previously diagnosed cervical spine degeneration now had progressed to cervical nerve root compression with neurologic compromise. (R. 198.) The doctor considered that a possible alternative diagnosis was a problem in the left shoulder rotator, rather than the cervical spine. He reported that Plaintiff's former employer's workers compensation insurance provider had not yet approved the repeat MRI. Accordingly, the rehabilitation clinic referred Plaintiff back to the orthopaedist, who examined Plaintiff the same day and reported his suspicion that the left arm pain and weakness might be caused by a massive rotator cuff lesion. This orthopaedist referred Plaintiff to yet another orthopaedic surgeon for further evaluation. (R. 186.)

After these July 29, 1997 reports there is no evidence that Plaintiff obtained further treatment for his back, neck, and shoulder pain. At the hearing before the ALJ in September, 1998, Plaintiff testified that he stopped going to doctors because he no longer had health insurance coverage after

8

his job ended in January, 1997, and could not afford further treatment. (R. 40-41.) Plaintiff filed an application for social security benefits on August 14, 1997. He claimed that he became disabled on January 6, 1997, the same date on which he was laid off from his job as a beer salesman. (R. 113, 124-29.) Plaintiff described his disabling condition as: "Constant back and neck pain. Unable to stand or sit for long lengths of time. Flare-up in pain every few months, leaving me unable to do anything." (R. 124.)

The SSA contacted the physician who last treated Plaintiff at the rehabilitation clinic to obtain an assessment of Plaintiff's medical condition. On October 28, 1997, that physician reported to the SSA that he last treated Plaintiff on July 29, 1997. He listed the diagnoses for Plaintiff as cervical and lumbar degenerative disc disease, myofascial pain, left shoulder rotator cuff pathology, and sacroiliac joint dysfunction. The doctor reported that Plaintiff experienced pain in the cervical and lumbar spine and diminished reflexes in the upper arms, but with no sensory loss or muscle atrophy. He noted that there were limitations on range of motion in both the cervical and lumbar spine, but that no surgery had been performed or was recommended. In response to the SSA's request to describe Plaintiff's ability to do work-related activities, the doctor declined to make such an assessment, but stated that a functional capacity evaluation would be needed for accurate information. (R. 223.)

On December 11, 1997, Plaintiff underwent an examination by a physician appointed as a consultant for the SSA. The consulting physician reported that Plaintiff complained of lower back pain, especially when Plaintiff walked one block, or climbed one flight of stairs, or sat or stood for more than five minutes. Plaintiff also reported to the SSA consultant physician that Plaintiff could not lift more than five pounds. Plaintiff described pain in his neck that radiated toward his left

shoulder and forearm. Plaintiff reported that he sometimes noticed a tendency to drop things, or to have difficulty unbuttoning a button or picking up a small pencil. (R. 232.)

The SSA consultant physician reported that Plaintiff showed a full range of motion in the cervical spine, with tenderness in the paravertebral muscle and pain upon flexion, extension, or left lateral rotation. (R. 233.) Plaintiff had normal muscle strength in both upper arms, and finger grasp and hand strength also were normal, though Plaintiff showed some difficulty unbuttoning a shirt button and picking up a pencil, leading the doctor to describe fine motor function as somewhat impaired, though gross motor function was not impaired. (R. 235.)

The physician also reported that Plaintiff described pain in the lumbosacral region radiating to the back of both legs. The range of motion in Plaintiff's lower back was limited to 45 degrees of flexion and ten degrees of extension, with lateral flexion limited to 20 degrees. All motion reportedly was painful. Plaintiff was able to raise his legs extended straight only to a sixty degree angle. The doctor noted tenderness in the paravertebral muscle. He reported that Tylenol was the only pain medication Plaintiff took presently, and this only eased the pain. (R. 232, 234.)

The SSA also arranged for a consulting radiologist to evaluate Plaintiff on December 11, 1997. An x-ray showed moderately advanced osteoarthritis and disc degeneration involving the mid and lower lumbar levels. (R. 237.)

The SSA appointed a third medical consultant to review all the medical records of treating and examining physicians and assess Plaintiff's residual functional capacity to perform work-related tasks. On January 14, 1998, that consultant reported his conclusions that Plaintiff should be capable of lifting up to 50 pounds occasionally and 25 pounds frequently, and to stand or sit six hours in an eight-hour workday. Plaintiff should be able to climb a ramp or stairs occasionally (but not a ladder,

10

rope, or scaffold), and occasionally could stoop or crouch. Plaintiff had no limitations on reaching, handling (gross manipulation) or feeling objects, but had some decrease in fine motor function evidenced by difficulty buttoning clothes and picking up items. (R. 239-41.)

The administrative hearing before the ALJ took place on September 23, 1998. At the hearing, Plaintiff testified that he experienced constant pain in his lower back, as well as pain in his neck that radiated down his left arm. He described the pain in his left arm as "uncomfortable," but not "excruciating," and testified that this constant left arm pain caused muscle weakness such that he could grip but not maintain his grip. (R. 32-33.) However, Plaintiff also stated he was right-handed (R. 33-34) and that his right hand and arm were not affected. (R. 67-68.) He testified that he could handle papers or light objects at least occasionally with his left hand. (R. 36.) Significantly for this opinion, Plaintiff testified that he could lift up five to ten pounds on a frequent basis and occasionally lift up 10 to 15 pounds or 20 pounds. (R. 43, 67-69.)

Plaintiff testified that long periods of sitting or standing in one spot "affects me," and that he could sit for about 30 minutes before his lower back pain would require him to stand up for about five minutes before he sat down again. (R. 35-36, 43.) He stated, however, that this lower back pain remained in his lower back and did not spread anywhere else. (R. 37.) He testified he could walk three blocks before his back would start hurting, but that he could rest for five minutes and then resume walking. (R. 43.) He stated he had difficulty bending, stooping, kneeling, and climbing steps. (R. 44-45.)

Dr. Raimondi, a neurologist, testified as a medical expert at the hearing. Dr. Raimondi testified that there was no evidence of any loss of muscle bulk, as would be expected with the pain alleged by Plaintiff, and no reduction in sensation or reflexes. (R. 53, 61.) Dr. Raimondi stated that

the cervical lumbar degeneration shown in Plaintiff's x-rays could be attributed to age, but that diagnostic studies were negative. (R. 51-52, 54-55.) Dr. Raimondi opined that Plaintiff's limitations stemmed from spinal discomfort, and stated that Plaintiff should be able to do light work, lifting 25 pounds occasionally and ten pounds frequently. (R. 56-58.) Dr. Raimondi further indicated that Plaintiff should be limited from more than occasional bending, stooping, climbing, and squatting. (R. 58-59.)

Following the hearing, at the ALJ's request, Plaintiff was examined by another neurologist, Dr. Brannegan, who performed an electromyogram to determine nerve conduction to Plaintiff's extremities. (R. 278-86.) The electromyogram found no evidence of lumbosacral nerve injury involving either leg. The neurologist reported that Plaintiff showed no muscle atrophy in arms or legs, and showed good strength in both arms, normal muscle tone in the legs with good strength distally, normal gait, ability to get on heels and toes, to hop briefly on each leg, and to do normal straight leg raising. The neurologist concluded that Plaintiff had a chronic pain syndrome due to lumbar spondylosis (forward slippage of a lumbar vertebra on the vertebra below it) and degenerative disc disease, with pain localized in the low back area. He reported that most movements that required prolonged sitting, standing, bending, and the like would cause pain, although there were no abnormal clinical findings demonstrable in the lower extremities.

Dr. Brannegan further reported that Plaintiff's back pain would affect his ability to lift or carry, but stated he was uncertain what maximum weight Plaintiff could lift either occasionally or frequently. (R. 283.) He estimated that Plaintiff could stand or walk two to three hours in an eight-hour day, and stand or walk without interruption for half an hour. (R. 284.) Plaintiff could sit in a chair only five to ten minutes at a time, and the doctor was uncertain how many total hours in an

eight hour day Plaintiff could sit, noting that it depended on the type of chair. The neurologist reported that Plaintiff could not climb or crawl, but could occasionally stoop, crouch or kneel. He noted that all motions of the low back generated pain, and Plaintiff's ability to reach was affected, though not his ability to handle or feel objects. The neurologist also reported that Plaintiff experienced pain when using his left arm to push or pull. (R. 284.) However, the neurologist noted repeatedly throughout his assessment of Plaintiff's physical limitations that there were no objective medical findings that supported these restrictions. (R. 283-85.) The ALJ advised Plaintiff's counsel of this additional evidence (identified as Exhibit 17F), and apparently Plaintiff's counsel did not object to the admission of that evidence or submit any additional evidence. (R. 286.)

## ALJ'S DECISION

The ALJ concluded that Plaintiff was capable of performing light and sedentary work, provided he "did not have to perform either activity for extended periods of time." (R. 19.) He went on to conclude that under these restrictions Plaintiff would be able to perform his "past relevant work," which the ALJ defined as the beer salesman job that Plaintiff was performing at the time he was laid off, as that job had been modified to eliminate lifting. (R. 19.) The ALJ described Plaintiff as having performed this modified job "for a considerable period of time," and observed that the job "ended under circumstances that are not clear but which apparently had nothing to do with [Plaintiff's] ability to perform the work as modified." (R. 19.)

The ALJ supported his conclusion by referring to various portions of the medical evidence. The ALJ cited the MRI study that was performed in July 1995, shortly after Plaintiff's auto accident. The ALJ recited the findings of that MRI exam substantially as they are described in the preceding

section of this opinion. (R. 18.) The ALJ referred summarily to the entire period of treatment that Plaintiff underwent following this July 1995 MRI by stating that Plaintiff had reported physical therapy did not benefit him, and epidural (injection) therapy did help, but only transiently. The ALJ also noted that surgery had not been recommended. (R. 18.) The ALJ commented in greater detail on the evaluations made in December 1997 and December 1998, summarizing those two evaluations much as they are described in the preceding section of this opinion. (R. 18-19.) The ALJ also stated that Dr. Raimondi had testified that, based on the MRI, Plaintiff's injuries did not involve impingement or pressure on the spinal nerves and that Plaintiff's pain is local and not sufficient to preclude him from light or sedentary work provided he did not perform either activity for extended periods of time. (R. 19.)

The ALJ stated that the objective medical evidence he referred to in support of his assessment of Plaintiff's residual functional capacity was confirmed by the daily activities Plaintiff described. (R. 19.) The ALJ cited essentially what Plaintiff reported on his August, 1997 application for disability benefits, that Plaintiff was able to drive, do light cooking and cleaning, go for walks, and go to the movies. (R. 127.) The ALJ also stated that he found Plaintiff's allegations of inability to work not credible "because of inconsistencies in the record as a whole." (R. 20.)

## STANDARD OF REVIEW

The Social Security Act provides for limited judicial review of a final decision of the Commissioner (effectively that of the ALJ where, as here, the Appeals Council has denied the applicant's request for review). Where the ALJ commits an error of law, "reversal is required without regard to the volume of the evidence in support of the factual findings." *Imani v. Heckler,*

797 F.2d 508, 510 (7th Cir. 1986). With respect to the ALJ's conclusions of fact, the reviewing court's role is limited. There the role of the district court is only to determine whether the decision of the ALJ is supported by substantial evidence in the record. *Wolfe v. Shalala*, 997 F.2d 321, 322 (7th Cir. 1993). In reviewing the Commissioner's decision, the court may not decide facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); *Brown v. Chater*, 913 F.Supp. 1210, 1213-14 (N.D. Ill. 1996)(Bucklo, J.). Thus, the court does "not substitute [its] own judgment for that of the ALJ." *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997). Rather, the court must affirm a decision if it is supported by substantial evidence and the ALJ has made no error of law. *Herr v. Sullivan*, 912 F.2d 178, 180 (7th Cir. 1990); *Edwards v. Sullivan*, 985 F.2d 334, 336-37 (7th Cir. 1993). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

When evaluating a disability claim the ALJ must consider all relevant evidence and may not select and discuss only that evidence that favors his ultimate conclusion. *Herron*, 19 F.3d 329, 333. Where conflicting evidence allows reasonable minds to differ, the responsibility for resolving the conflict falls on the ALJ, not the court. *Herr*, 912 F.2d 178, 181; *see also Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989) (the ALJ has the authority to assess medical evidence and give greater weight to that which he finds more credible). Where there is a conflict between medical opinions, the ALJ may choose between those opinions but may not substitute his own lay opinion for that of the medical professionals. *Davis v. Chater*, 952 F.Supp. 561, 566 (N.D. Ill. 1996)(Keys, M.J.). A treating physician's opinion regarding the nature and severity of a medical condition is entitled to

15

controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

Although the district court's role is limited to determining whether the ALJ's final decision is supported by substantial evidence and based upon proper legal criteria, this does not mean that the ALJ is entitled to unlimited judicial deference. In addition to relying on substantial evidence, the ALJ must articulate his analysis at some minimal level and state his reasons for accepting or rejecting "entire lines of evidence," although he need not evaluate in writing every piece of evidence in the record. *See Herron*, 19 F.3d at 333; *see also, Young v. Secretary of Health and Human Servs.*, 957 F.2d 386, 393 (7th Cir. 1992) (ALJ must articulate his reason for rejecting evidence "within reasonable limits" in order to allow for meaningful appellate review); *Guercio v. Shalala*, No. 93 C 323, 1994 WL 66102, at *9 (N.D. Ill. March 3, 1994)(Marovich, J.)(ALJ need not spell out every step in his reasoning, provided he has given sufficient direction that the full course of his decision may be discerned) (citing *Brown v. Bowen*, 847 F.2d 342, 346 (7th Cir. 1988).)

## DISCUSSION

The Social Security regulations ("Regulations") prescribe a sequential five-part test for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520 (1999). The Social Security Commissioner must consider: (1) whether the claimant has performed substantial gainful activity during the period for which he claims disability; (2) if he has not performed any substantial gainful activity, whether the claimant has a severe impairment or combination of impairments; (3) if Plaintiff has a severe impairment, whether the claimant's impairment meets or equals any impairment listed

in the Regulations as being so severe as to preclude substantial gainful activity; (4) if the impairment does not meet or equal a listed impairment, whether the claimant retains the residual functional capacity, despite his impairment, to perform his past relevant work; and (5) if the claimant cannot perform his past relevant work, whether the claimant is able to perform any other work existing in significant numbers in the national economy, considering his residual functional capacity together with his age, education, and work experience. *Id.*; *see also Young v. Secretary of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). The claimant bears the burden of proof at steps one through four, after which the burden shifts to the Commissioner at step five. *Id.*

In the present case, the ALJ made the finding at step four that Plaintiff was not disabled. Thus, the ALJ found that Plaintiff had not carried his burden of proving he was unable to perform his "past relevant work." Plaintiff contends that the ALJ erred at step four in considering the modified job Plaintiff performed after his injury to be "past relevant work" under 20 C.F.R. § 404.1565(a), and that the ALJ erred in concluding that Plaintiff retains the residual functional capacity to return to that work.

## A. Was the modified post-injury job Plaintiff's "past relevant work?"

Analyzing Plaintiff's challenges to the ALJ's finding is complicated by the fact that Plaintiff apparently took a different approach before the ALJ than is being argued to this Court. As discussed above, when he filed his claim initially, Plaintiff stated that he became disabled on January 6, 1997, the day he was laid off. (R. 113.) As Plaintiff notes in his Memorandum, his counsel argued to the ALJ that the onset of Plaintiff's disability was the date of the accident in May, 1995, and that Plaintiff's work after that date was an "unsuccessful work attempt." (Pl.'s Mem. Supp. Mot. Summ.

Jdmt at 15, n.2.) In oral argument before this Court, Plaintiff's counsel disclaimed any assertion that there was an "unsuccessful work attempt." Instead, Plaintiff now argues that the modified job that Plaintiff performed was not "substantial gainful activity" because it was the result of special accommodations. Furthermore, Plaintiff argues that because he turned 50 years old in November, 1995 (six months after the accident), the Medical-Vocational Guidelines (the "Grid," 20 C. F. R. Pt. 404, Subpt. P. App. 2 § 201.14) would require a finding of disability even if Plaintiff is capable of sedentary work. (Pl.'s Mem. at 15, n.2.) Thus, apparently, Plaintiff is now arguing that the disability onset is January 6, 1997, which is the date that the ALJ used. (R. 19.)

For purposes of a step four analysis, past work experience is "relevant" when it was (a) done within the last 15 years; (b) lasted long enough for the claimant to learn to do it; and (c) was substantial gainful activity. *See* 20 C.F.R. § 404.1565(a) (1992); *Lauer v. Bowen*, 818 F.2d 636, 639 (7th Cir. 1987). Thus, by definition, past relevant work must rise to the level of substantial gainful activity. *See Lauer*, 818 F.2d at 639. Substantial gainful activity is defined as work "that involves doing significant physical or mental activities . . . even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b). An unsuccessful work attempt, on the other hand, is work that a claimant is forced to stop after a short time because of his or her impairment and is not therefore substantial gainful activity constituting past relevant work. *See Sample v. Shalala*, 999 F.2d 1138, 1142 (7th Cir. 1993) (citing 20 C.F.R. §§ 404.1574(a)(1), 416.974(a)(1) (1992)). If Plaintiff proved that his post-injury job was an unsuccessful work attempt, then Plaintiff's past relevant work is not the modified work he had in 1996, but the work he performed prior to his injury. The evidence is that the prior job involved frequent lifting of up to 25 pounds and occasional lifting of as much as

100 pounds. The ALJ found, however, that Plaintiff had the residual functional capacity to perform nothing more strenuous than light work. The Regulations define light work as, among other things, work that requires frequent lifting of no more than 10 pounds and occasional lifting of no more than 20 pounds. 20 C.F.R. § 404.1567(b). Accordingly, if Plaintiff's return to work following his injury was an unsuccessful work attempt, there would be no justification for the ALJ's finding at step four that Plaintiff was not disabled.

In any event, the record does not support an argument that Plaintiff's employment at Chicago Beverage Systems following his return to work after the May, 1995 accident was an "unsuccessful work attempt." As discussed above, the record is less than clear about how many months Plaintiff worked after his accident and before the January 1997 layoff.[6] However, Plaintiff testified that he worked full time as a beer salesman, minus the heavy lifting, for three to four months in 1996 prior to his layoff on January 6, 1997. (R. 66.) Social Security Ruling 84-25 provides that a work effort lasting between three and six months will be considered unsuccessful if it ended or was reduced to the nonsubstantial gainful activity level due to the claimant's impairment or to the removal of special conditions related to the impairment and: (a) there were frequent absences due to the impairment; (b) the work was unsatisfactory due to the impairment; (c) the work was done during a period of remission; or (d) the work was done under special conditions. *See* Social Security Ruling 84-25(2)(a)-(d), 1984 WL 49799 at *3.

An essential element of an unsuccessful work attempt is a showing that Plaintiff's

---

[6] At the hearing before the ALJ, Plaintiff's counsel offered to supplement the record with company records such as pay stubs relevant to Plaintiff's dates of employment during 1996. (R. 66, 73.) The only record that Plaintiff's attorney provided was a letter from the employer's personnel department verifying that Plaintiff's last day with the company was January 6, 1997. (R. 106.)

impairment, and not some other circumstance, caused his employment to end. *See Stevenson v. Chater*, 105 F.3d 1151, 1155 (7th Cir. 1997). He may show this by offering impartial confirmation from the employer or medical records. *See* Social Security Ruling 84-25(2)(a)-(d), 1984 WL 49799 at *3 (S.S.A.) ("If the information from the employer [confirming that claimant's impairment caused his or her discharge] is inconclusive or if none is available, the reason for work discontinuance or reduction may be confirmed with the person's physician or other medical source."). Plaintiff, however, offers only his self-serving testimony to prove that he was laid off because of his impairment. (R. 70, 72.) This testimony is insufficient. *See* Social Security Ruling 84-25(2)(a)-(d), 1984 WL 49799, at *3 ("In considering why a work effort ended or was reduced to the non-SGA level, we do not rely solely on information from the worker."); *Kimble v. Sullivan*, No. 89 C 7494, 1990 WL 70842, at *6 (N.D. Ill. May 9, 1990) (ALJ not required to regard past work as an unsuccessful work attempt where claimant offered only her own testimony to show that her impairment was the reason for her discharge).

Indeed, eleven other employees were laid off on the same day as part of a reduction in force, which buttresses the ALJ's conclusion that Plaintiff's discharge was unrelated to his impairment. (R. 70.) Plaintiff further undermined his claim of an unsuccessful work attempt by testifying that he had hoped to continue performing in his job as long as it continued. (R. 71-72.) *See Stevenson*, 105 F.3d at 1155 (substantial evidence supported ALJ's finding that claimant left prior position at the mall due to a lack of work rather than her impairment). *See also Ramos v. Barnhart*, No. CIV. 01-97-JD, 2002 WL 826826, at *6 (D.N.H. April 30, 2002) (claimant did not show that short work attempt was unsuccessful due to impairment where he testified that he was able to do the job and was surprised by his discharge).

Finally, the medical reports during 1996 likewise do not support a finding that Plaintiff was forced to leave his job because of his impairment but rather discuss the light nature of the work and Plaintiff's ability to engage in regular work despite experiencing some pain. (R. 182-83, 189, 191-92, 194.)

In this court, Plaintiff argues that that his employer made special accommodations for his impairment such that the job did not rise to the level of substantial gainful activity. Plaintiff cites 20 C. F. R. §§404.1573(c), 416.973(c), which provides, in relevant part:

> The work you are doing may be done under special conditions that take into account your impairment, such as work done in a sheltered workshop or as a patient in a hospital. If your work is done under special conditions we may find that it does not show that you have the ability to do substantial gainful activity. . . . However, work done under special conditions may show that you have the necessary skills and ability to work at the substantial gainful activity level.

Special conditions may include situations in which claimants: (1) required and received special assistance from other employees in performing their work; (2) were allowed to work irregular hours or take frequent rest periods; (3) were provided with special equipment or were assigned work especially suited to their impairment; (4) were able to work only because of specially arranged circumstances, for example, other persons helped them prepare for or get to and from work; (5) were permitted to work at a lower standard of productivity or efficiency than other employees; or (6) were given the opportunity to work, despite their impairments, because of a family relationship, past association with the firm, or other altruistic reasons. *Id.*

Plaintiff further argues that a finding of an ability to perform past work is only appropriate if the claimant retains the capacity to perform either the actual functional demands and duties of the past job as the claimant actually performed it or as the job is generally performed in the national

21

economy, without consideration of special accommodations provided to the individual. (Pl.'s Mem. at 12.) Again, because this is an analysis at step four, Plaintiff bears the burden of proof, and Plaintiff has failed to demonstrate that the ALJ's conclusion was not supported by substantial evidence. There is no evidence that Chicago Beverage Systems made special attendance accommodations for Plaintiff following his return to work in 1996. In fact, as noted above, Plaintiff testified that after his supervisors informed him that his absences would cost him his job, he made every effort to make it to work as scheduled. (R. 73.) Further, the nature of the job, in which Plaintiff made field calls to his customers, allowed him to take intervals of rest as needed. (R. 73.) The fact that his employer eliminated the heavy lifting requirements of Plaintiff's prior job is likewise not sufficient to prove that the work was done under special conditions. *See Sample v. Shalala*, 999 F.2d at 1142 (because claimant had worked as convenience store clerk for more than four months, substantial evidence supported ALJ's determination that job constituted past relevant work even though claimant testified that manager would cover for her at times). By his own testimony, Plaintiff worked full time in the modified job for at least three to four continuous months, during which he continued to check on accounts, write orders and maintain accounts. (R. 71-72.) As such, Plaintiff used his experience, skills, supervision and responsibilities in performing the job. *See* 20 C.F.R. 404.1573(a) (use of skills and experience demonstrates ability to work at substantial gainful activity level). There is also no evidence that Plaintiff's job following the accident was created especially for him or did not contribute substantially to the operation of Chicago Beverage System's business. *See Pitts v. Sullivan*, 923 F.2d 561, 565 (7th Cir. 1991) (factory carpenter's year long post-injury work as a door trimmer was past relevant work/substantial gainful activity because there was no evidence that position was a "make-work" position; job existed prior to injury and

provided a valuable service to the employer as evidenced by the salary).

*Jones v. Sullivan*, 779 F.Supp 1033 (W.D. Mo. 1991), cited by Plaintiff was, in contrast, such a clear case of the ALJ erring in determining that the claimant could perform his past relevant work that the District Judge ordered the Secretary to show cause why he should not be sanctioned under Rule 11 for arguing in support of the ALJ's decision. In that case, the ALJ determined that the claimant could return to his former work as a bus driver or perform his current work as a janitor; in fact, the claimant had been a bus mechanic, not a driver. *Id.* at 1035. His work as a janitor was done under his brother's supervision and the brother accommodated the claimant's physical limitations. *Id.* at 1034. In that case, the criteria set out in 20 C. F. R. §§404.1573(c) were plainly present, while they are absent here.

Finally, even though Plaintiff's post-injury work was less physically demanding than his previous work, it nevertheless conforms substantially with the definition of a malt liquor sales representative found in the Dictionary of Occupational Titles ("DOT"). The relevant section of the DOT defines a beer salesperson as one who "sells beer and other malt liquors to taverns, hotels, restaurants, cocktail lounges, bowling alleys, steamship companies, railroads, military establishments, delicatessens, and supermarkets for wholesale distributor. Performs other duties as described under SALES REPRESENTATIVE (retail trade; wholesale tr.)."[7] DOT § 260.357-018.

---

[7] The DOT defines Sales Representative(retail or wholesale trade) as follows:

Sells products to business and industrial establishments or individual [sic] for manufacturer or distributor at sales office, store, showroom, or customer's place of business, utilizing knowledge of product sold. Compiles lists of prospective customers for use as sales leads, based on information from newspapers, business directories, and other sources. Travels throughout assigned territory to call on regular and prospective customers to solicit orders or talks with customers on sales floor or by phone. Displays or demonstrates product, using samples or catalog, and

The DOT also specifies that a liquor salesperson job requires occasional lifting of up to 20 pounds, frequent lifting of up to 10 pounds, with no climbing, balancing, stooping, kneeling, crouching, or crawling. *See* DOT § 260.357-018. This is consistent with Plaintiff's testimony regarding his lifting abilities and the ALJ's finding that Plaintiff is capable of light or sedentary work. (R. 19, 67.) At the fourth step of the evaluation, a claimant will be found "not disabled" if he or she retains the residual functional capacity to perform *either* the actual demands of a particular job in the past *or* the functional demands and duties of the occupation as it is generally performed in the economy. *See Wolfe v. Shalala*, 997 F.2d 321, 323 (7th Cir. 1993) (finding that substantial evidence supported ALJ's conclusion that claimant's past part-time work as an automobile salesman was past relevant work because it complied with the DOT definition of the job); *see also Anderson v. Bowen*, 868 F.2d 921, 925, n. 11 (7th Cir. 1989) (ALJ did not err finding at step five that claimant was capable of returning to the light work of laundry sorting as generally performed in the economy, even though claimant's prior laundry sorting job required more exertion than listed in the DOT definition). Thus, the DOT descriptions of the performance of beer sales jobs in the general economy further supports the ALJ's finding that Plaintiff's post-injury constituted past relevant work and substantial gainful activity to which he could return.

The Court finds that substantial evidence supports that ALJ's decision that Plaintiff's post-injury liquor salesperson job constituted substantial gainful activity and past relevant work rather

---

emphasizes salable features. Quotes prices and credit terms and prepares sales contracts for orders obtained. Estimates date of delivery to customer, based on knowledge of own firm's production and delivery schedules. Prepares reports of business transactions and keeps expense accounts.

*Dictionary of Occupational Titles*, Master Titles and Definitions, Vol. 1, p. 2. (1991).

than an unsuccessful work attempt or work under special accommodations.

**B.  Does Plaintiff's residual functional capacity enable him to perform light or sedentary work?**

Plaintiff argues alternatively that even if the ALJ correctly found that Plaintiff's 1996 work was past relevant work, he nevertheless erred in finding that Plaintiff retains the residual functional capacity to return to his past relevant work, *i.e.*, light or sedentary work not requiring prolonged periods of sitting or standing.  (R. 19.)  Specifically, Plaintiff contends that the ALJ ignored Plaintiff's medical treatment records from 1995 and 1996, that the ALJ failed adequately to articulate his reasons for doubting Plaintiff's credibility regarding his ability to work, and that Plaintiff's inability to sit or stand for extended periods renders him incapable of performing light or sedentary work.

The regulations define sedentary work as not requiring lifting more than ten pounds and involving mostly sitting, with occasional walking and standing.  20 C.F.R. § 404.1567(a).  Light work involves lifting not more than 20 pounds occasionally and 10 pounds frequently, and requires a good deal of walking or standing, or sitting with some pulling or pushing of arm or leg controls. 20 C.F.R. § 404.1567(b).

**1.  The ALJ properly considered medical evidence in determining Plaintiff's residual functional capacity.**

Substantial evidence supports the ALJ's conclusion that Plaintiff had the residual functional capacity to return to the light work entailed in his past relevant work as a liquor salesman.  As discussed above, the ALJ's opinion discussed Plaintiff's testimony, the 1995 MRI, two consultations in December, 1997, and December, 1998, and the testimony of Dr. Raimondi, the medical expert

25

who testified at the hearing, in making his determination. (R. 18-19.) Plaintiff asserts, however, that the ALJ impermissibly placed undue emphasis on the consultation evidence and Dr. Raimondi's testimony (which Plaintiff claims is inconsistent with his treatment records) while ignoring the bulk of Plaintiff's treatment records from 1995, 1996 and most of 1997. Plaintiff correctly points out that the ALJ must evaluate all of the evidence in the record, may not isolate those pieces of evidence that support his ultimate conclusion, and must state his reasons for accepting or rejecting "entire lines of evidence." *See Herron*, 19 F.3d at 333; *Bauzo v. Bowen*, 803 F.2d 917, 923 (7th Cir. 1986). Further, Plaintiff correctly asserts that a treating physician's opinion, which provides a longitudinal view of the claimant's condition, is entitled to controlling weight provided it is well supported by medical findings and not inconsistent with other substantial record evidence. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Clifford v. Apfel*, 227 F.3d at 870; *Guercio v. Shalala*, No. 93 C 323, 11994 WL 66102, at *12 (N.D. Ill. March 3, 1994).

In this case, however, application of those principles supports the ALJ's decision. First, the ALJ's opinion specifically mentions Plaintiff's report that physical therapy was not beneficial, that epidural injection therapy relieved his pain only transiently, and that surgery had not been recommended. (R. 18.) Thus, it does not appear that the ALJ rejected an entire line of evidence. In fact, the treatment records from Plaintiff's physical therapists and orthopaedists state that Plaintiff is capable of working despite experiencing some pain, provided that he not be required to sit or stand for prolonged periods or to do much lifting. (R. 182-83, 189, 191, 192, 194.) Significantly, none of Plaintiff's treating physicians found that he was unable to work after he was cleared for work in November 1995.

Plaintiff also argues that the ALJ should not have relied on Dr. Raimondi's testimony.

26

Generally, testimony of a medical examiner is evidence that the ALJ should consider, and the ALJ is entitled to accord a medical opinion weight so long as it is consistent with other substantial evidence in the record. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Plaintiff claims that Dr. Raimondi's testimony is inconsistent with Plaintiff's treatment records and, at any rate, does not support a finding that Plaintiff is capable of sedentary or light work. Specifically, Plaintiff argues that Dr. Raimondi's testimony should be disregarded because it states that Plaintiff's reflexes were normal, whereas a medical record from May 1995 indicates some abnormalities in Plaintiff's bilateral upper extremities and hamstring reflexes. (R. 52, 61, 63, 215.) Plaintiff fails to demonstrate why this difference mandates a different finding regarding Plaintiff's ability to perform light or sedentary work. Dr. Raimondi considered the reported limitations in Plaintiff's movement. (R. 58-59.) Raimondi's testimony that Plaintiff can perform work requiring lifting 10 pounds frequently and up to 25 pounds occasionally so long as he need not stand or sit for prolonged periods, supports the ALJ's residual functional capacity finding. *See* 20 C.F.R. § 404.1567(a) & (b).

Plaintiff also fails to point to any medical evidence that indicates that his impairment worsened after his layoff in January 1997 such that Plaintiff, while he may have been capable of performing his job in 1996, could no longer return to such work. The treatment records spanning 1997 and 1998 indicate that, while Plaintiff experienced pain on a continuous basis, which was aggravated by heavy lifting or prolonged sitting or standing, physical therapy and pain medication alleviated some of that pain, and there was no evidence of decreased muscle strength in his arms and legs. (R. 204, 209-11, 214-16.) As mentioned earlier, a treatment record from June 1997 stated that Plaintiff was working full time with decreased lifting. (R. 211, 216.) Further, these records directed Plaintiff to increase his amount of aerobic activity. *Id.* These treatment records support the ALJ's

finding that Plaintiff could return, post-January 1997, to his past relevant work as it had been performed following his injury.

## 2. The ALJ's conclusion regarding Plaintiff's credibility is supported by the evidence.

Plaintiff further argues that remand is necessary because the ALJ did not adequately consider Plaintiff's subjective testimony and failed to articulate his reasons for doubting Plaintiff's credibility regarding his ability to work. In his numbered conclusions, the ALJ stated simply that "[t]he claimant's allegations of inability to work were not credible because of significant inconsistencies in the record as a whole." (R. 20.)

The ALJ's credibility determinations are entitled to considerable deference because the ALJ is in the best position to observe witnesses. *See Balenton v. Halter*, 156 F.Supp. 2d 776, 785 (N.D. Ill. 2001) (Nolan, M.J.) (citing *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) and *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993)). Unless the ALJ's credibility determination is "patently wrong" and has no support in the record, it should not be overturned. *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994). Social Security Ruling 96-7p, which applies to the ALJ's evaluation of a claimant's description of symptoms, requires the ALJ to evaluate the "intensity, persistence, and functionally limiting effects of the symptoms . . . to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996).

In making a credibility determination, the ALJ must consider: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage,

effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p at * 3. Further, "a finding that an individual's statements are not credible, or not wholly credible, is not in itself sufficient to establish that the individual is not disabled. All of the evidence in the case record . . . must be considered before a conclusion can be made about disability." *Id.* at * 5. The Social Security Ruling also states the ALJ's evaluation must contain "specific reasons" for a credibility finding. *Id.* at *2; *See also Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (remanding the ALJ's decision for a more elaborate discussion of credibility decision regarding claimant's pain).

In this case, the ALJ noted that Plaintiff engages in daily activities such as walking, driving, light cooking and cleaning, and going to the movies. (R. 19.) The ALJ further credited Plaintiff's allegations of neck and back pain, and stated that plaintiff reported that physical therapy had not been helpful and that epidural therapy helped only transiently. (R. 18.) He also noted that Plaintiff has exertional limitations and that prolonged periods of activity aggravate Plaintiff's condition. (R. 19.) Plaintiff himself testified that he was able to lift frequently five to ten pounds, and occasionally 15 or 20 pounds. (R. 67-69.) Moreover, as discussed in the ALJ's evaluation of the evidence, Plaintiff performed the modified job at Chicago Beverage Systems for "a considerable period of time" and did not end because Plaintiff was unable to perform the work. (R. 19.) In fact, Plaintiff testified that he had hoped to continue in the job had he not been laid off. (R. 69, 71.)

Plaintiff has not pointed to any specific testimony at the hearing which, if taken as credible,

would substantially contradict the medical evidence relied on by the ALJ or mandate a finding of disability. As such, he has failed to show that the ALJ's credibility determination was insufficient. *See Schumacher v. Barnhart*, 196 F.Supp. 2d 716, 727 (N.D. Ill. 2002) (Denlow, M.J.) (upholding ALJ's credibility determination where claimant's testimony substantially corroborated medical evidence that claimant was not disabled); *Lange v. Barnhart*, No. 01-CV-136-JPG, 2002 WL 418037, at *4 (S.D. Ill., March 12, 2002) (ALJ's credibility finding and explanation sufficient where claimant failed to point out contradictory testimony). *Compare Zurawski*, 245 F.3d at 885 (ALJ's summary credibility finding insufficient where plaintiff's testimony that he could only work two to three hours per day and suffered memory loss and concentration deficits on his pain medication conflicted with medical evidence that, if credible, would have mandated a different finding on disability).

Finally, this is not a case where the ALJ failed to obtain current, relevant medical evidence. Following the hearing, the ALJ obtained another, more current, neurological examination of Plaintiff by Dr. Brannegan, including an electomyography study, which resulted in a finding of chronic low back pain, not supported by objective medical evidence, and a conclusion that prolonged sitting, standing or bending would produce or accentuate the low back pain. (R. 279-85.) The ALJ considered this evidence in his opinion. In his summary and evaluation of the evidence, the ALJ adequately laid out the basis for his finding that Plaintiff's allegation of inability to work was not credible.

**3. Plaintiff's sitting and standing limitations are not inconsistent with his ability to return to past relevant work.**

Finally, Plaintiff argues that the ALJ erred in finding that Plaintiff possessed the residual

30

functional capacity to return to his past relevant work because his inability to sit or stand for extended periods renders him incapable of performing light or sedentary work. However, the evidence showed that Plaintiff *was* able to perform the requirements of his modified beer salesperson job by doing so for three to four continuous months. *Compare Grindle v. Sullivan*, 774 F.Supp. 1501, 1512 (N.D. Ill. 1991) (claimant's ability to perform daily tasks not sufficient to support a finding at step five that she could perform medium work on the ongoing repetitive basis necessary to hold a job). As noted above, Plaintiff testified that the nature of his job allowed him to take breaks as needed to alleviate his back and neck pain. Also as discussed above, Plaintiff has pointed to no evidence or testimony to show that his impairment has worsened following his layoff such that he could no longer perform his job even taking into account his ability to take breaks as needed.

Citing Social Security Ruling 83-10 and the Seventh Circuit's decision in *Allen v. Sullivan*, 977 F.2d 385, 389-90 (7th Cir. 1992), Plaintiff argues that the ALJ's finding that Plaintiff cannot stand or sit on for a prolonged period precludes a finding that Plaintiff has a residual functional capacity for light or sedentary work. Social Security Ruling 83-10 provides that, after the ALJ determines that a claimant's impairment precludes him or her from returning to past relevant work, evaluation of the claimant's ability to do other work becomes necessary. SSR 83-10, 1983 WL 31251, at *1 (S.S.A. 1983). SSR 83-10 further provides that the full range of sedentary work requires a person to sit approximately 6 hours of an 8-hour workday, and the full range of light work requires a total of six hours of standing or walking. SSR 83-10, 1983 WL 31251, at * 5-6. In *Allen*, the Seventh Circuit reviewed the district court's affirmation of the ALJ's finding at step five that the claimant was capable of light work even though the claimant's testimony and the medical evidence established that he could not sit, walk or stand for more than 20 minutes at a time. *Allen*, 977 F.2d

at 389. The *Allen* court remanded the case, stating that it was "unlikely that jobs exist in the 'full range' of light work that would permit [the claimant] to sit down every twenty minutes and take a break." *Allen*, 977 F.2d at 389 (citing *DeFrancesco v. Bowen*, 867 F.2d 1040, 1044-45 (7th Cir. 1989)).

Neither *Allen* nor Social Security Ruling 83-10 mandates a different result in this case because, as discussed above, substantial evidence supported the ALJ's decision at step four that Plaintiff's post-injury work was past relevant work to which Plaintiff could return. Thus, in this case, unlike *Allen*, the burden of proof never shifted to the Commissioner at step five to prove that Plaintiff was capable of performing the full range of light or sedentary work. The court thus is not required to perform a step five analysis. *See Knight v. Chater*, 55 F.3d 309, 316, n.2 (7th Cir. 1995) ("Because we affirm the ALJ's decision that [claimant] did not pass step four, we need not consider step five.") Moreover, even if a step five analysis were proper, Plaintiff's inability to sit or stand for prolonged periods would not necessarily require a finding of disability upon remand. Social Security Ruling 83-12 recognizes that, when a claimant who cannot return to past relevant work has sitting and/or standing limitations, "[t]here are some jobs in the national economy – typically professional and managerial ones – in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it . . . he or she would not be found disabled." SSR 83-12, 1983 WL 31253, at * 4 (S.S.A. 1983). SSR 83-12 and the cases interpreting it further provide that in such cases, when performing a step five analysis, the ALJ should consult a vocational expert. *See* SSR 83-12, 1983 WL 31253, at * 4; *Peterson v. Chater*, 96 F.3d 1015, 1016-17 (7th Cir. 1996) (noting that claimant with sitting and standing limitations may be able to perform some jobs in the economy and remanding the case to the ALJ to perform a step five analysis using a vocational expert

in compliance with SSR 83-12).

The Court finds that substantial evidence supported the ALJ's finding at step four that Plaintiff could return to his former work despite his limitations regarding prolonged sitting or standing. As such, remand to the ALJ is not necessary.

## CONCLUSION

Substantial evidence supports the ALJ's conclusion that Plaintiff was not disabled because Plaintiff possessed the residual functional capacity to return to his past relevant work as a beer salesman. The Court also finds no error of law that requires reversal of the ALJ's decision to deny benefits to Plaintiff. Accordingly, Plaintiff's motion for summary judgment [Dkt # 19] is DENIED, and Commissioner's motion for summary judgment [Dkt # 24] is GRANTED.

**IT IS SO ORDERED.**

**GERALDINE SOAT BROWN**
**United States Magistrate Judge**

**DATED: July 12, 2002**